(January 31, 1905.)

## WILSON v. VOGELER.

[79 Pac. 508.]

PRINCIPAL AND AGENT—TELEPHONE COMMUNICATION—CONTRACT MADE BY TELEPHONE—SUBSTANTIAL CONFLICT IN EVIDENCE—HEARSAY—INSTRUCTIONS.

1. Held, in this case that there is not a substantial conflict in the evidence and that the evidence is not sufficient to sustain the verdict.

2. A conversation between respondent and one G. in regard to whether the latter could handle certain seed at a certain price, held hearsay and incompetent.

(Syllabus by the court.)

APPEAL from the District Court of the Fifth Judicial District. Honorable Alfred Budge, Judge.

Action to recover damages for violation of a contract. Verdict and judgment for the plaintiff. Judgment reversed.

The facts are stated in the opinion.

F. S. Dietrich, for Appellant.

·The making of this contract was not within the scope of Martin's authority, or apparent authority. He was merely what is ordinarily called a commercial "drummer." He was recognized as such by the plaintiff. As such an agent he has no authority to make the contract in question. The general rule is that a drummer or commercial traveler has authority only to take orders subject to the approval of his principal. (*John Matthews' Co. v. Renz,* 22 Ky. Law Rep. 1528; 61 S. W. 9; *Clough v. Whitcomb,* 105 Mass. 482; *Bensberg v, Harris,* 46 Mo. App. 404.) The second assignment involves the ruling of the court in permitting the plaintiff to detail a conversation between himself and one H. L. Griffin at Ogden when the plaintiff was not present. (1 Greenleaf on Evidence, par. 467.) The plaintiff knew and was advised by Martin himself that he (Martin) could not make this contract without authority from the defendant. The plaintiff knew that if he dealt with Martin and made such a contract, it would be worthless and not binding upon the defendant, unless Martin first procured express authority to execute it. The plaintiff knew that such authority, if procured at all, was procured by telephone. He took his chances in getting his authority in that way. There could be no valid contract under such circumstances; nor could there be any valid authorization to make such a contract, if such a mistake was made. It was for the jury to find whether there was a mistake or not, but it was for the court to advise the jury of the effect of such mistake, so that they could find their general verdict intelligently. As to the effect of such mistake, see Clark on Contracts, p. 288; 20 Am. & Eng. Ency. of Law, 2d ed., pp. 809, 811.

Holden & Holden, for Respondent.

Those dealing with an agent are entitled to presume that his agency is general. (*Trainer v. Morrison,* 78 Me. 160, 57 Am. Rep. 790, 3 Atl. 185.) Nowhere in the record does it appear that prior to or at the time the contract in question was made,

respondent had even seen any of appellant's letterheads or order blanks. Nor does it appear that respondent had knowledge of the limitations appellant claims to have put upon his agent's authority. The rule of the law is that the rights of third parties who have reasonably and in good faith relied upon the apparent authority of the agent cannot be prejudiced by secret limitations or restrictions upon it of which they had no notice. (Mechem on Agency, secs. 279, 708; *White Lake L. Co. v. Stone*, 19 Neb. 402, 27 N. W. 395; *Keith v. Hirschberg Optical Co.*, 48 Ark. 138, 2 S. W. 777.) A party may testify to that portion of the conversation over a telephone which is spoken in his presence, although he could not hear the replies and did not know with whom the conversation was held. (*Miles v. Andrews*, 153 Ill. 262, 38 N. E. 644; 1 Johns on Evidence, sec. 210; *Wolf et al. v. Missouri Pac. R. Co.*, 97 Mo. 473, 11 Am. St. Rep. 331, 11 S. W. 49, 3 L. R. A. 539-542; *McCarty v. Peach*, 186 Mass. 67, 70 N. E. 1029, and cases cited.)

SULLIVAN, J.—This action was commenced by respondent against appellant, who was then doing business as the Vogeler Seed and Produce Company, at Salt Lake City, Utah, to recover $1,295 damages on account of the failure of the defendant to deliver fifty thousand pounds of alfalfa seed in accordance with an alleged written contract or agreement dated January 15, 1901. The principal issue presented by the pleadings, and especially by the evidence, was whether or not said agreement was authorized by the defendant, and therefore binding upon him. The case was tried by the court with a jury and a verdict for $625 was rendered in the plaintiff's favor. Thereafter the court overruled a motion for a new trial, and the appeal is from the judgment and order denying a new trial. The alleged contract is signed by the respondent and is executed on behalf of the appellant by one S. H. Martin, who was the agent of the appellant, and the main issue was whether or not Martin was authorized by the appellant to execute said contract. Five errors are assigned. The first is that the evidence is insufficient to justify the verdict. It appears from the evidence that S. H. Martin, who signed the contract referred to on behalf

of the appellant, had been employed by the appellant to solicit orders upon commission for the appellant. It also appears that all orders taken by him were subject to appellant's approval. It also appears that respondent was advised before the contract in question was executed that said Martin had no general or implied authority to sign said contract, and at that time he told the respondent that he could not close the deal, and that he would telephone the appellant and let him know whether the appellant would permit him to enter into such a contract. But it is contended on the part of the respondent that the appellant conversed with said Martin by telephone, in which conversation he authorized said Martin to make said contract. The respondent testified that said Martin put in his call at the telephone office and after getting the appellant the door of the telephone booth was left wide open and that Martin told Vogeler, the appellant, that he had a chance to sell fifty thousand pounds of alfalfa seed, Purity brand, $125 to be paid down and the balance to be paid in sixty days; that Martin said: "Will I sell it? Don't say no." That when he left the telephone booth he said, "All right, come out and we will make the contract," and that they went to an attorney and had him draw up a contract and it was signed and he gave Martin his check for $125.

Lee Hughes testified that he was telephone operator in the telephone office at Idaho Falls on the 15th of January, 1901, when the respondent and Mr. Martin were there, and that he heard a part of the conversation between Martin at Idaho Falls, Idaho, and Vogeler at Salt Lake City, Utah; that he heard Martin say that he had sold fifty thousand pounds of seed, and the man at the other end said it was all O. K. That when he put the call in he placed the call for Vogeler of the Vogeler Seed and Produce Company. That he came to hear the conversation because an operator on the telephone line has to break in at times to see whether anyone is interrupting and to keep the line clear for the parties talking. On cross-examination he testified that he heard Martin say: "I have sold fifty thousand pounds of seed," and Vogeler replied that it was all O. K; that he did not say five thousand pounds; he said fifty thousand pounds; that the telephone booth door was open while Martin

was talking and that he, witness, broke in on the line once or twice; that he heard the conversation when he broke in on different occasions; that he didn't exactly remember what he heard the first time he broke in, and that the conversation between Martin and Vogeler lasted about two minutes; that he broke in twice; that ten or twelve seconds elapsed between the time the fifty thousand pounds of seed were mentioned and the time the answer came, and that he did not hear what passed between them during that time; that he had no particular interest in listening and that he just happened to hear what he did; that he didn't know what was said in addition to what he had testified to; that they talked about two minutes and it is possible Martin may have said, "I can sell fifty thousand pounds and also five thousand more," and that between the time that Martin said fifty thousand pounds and the time that witness heard the reply there was time enough for him to have made that remark; that he didn't hear Martin say anything about five thousand pounds.

Miss Toronto, who was stenographer in Vogeler's office, at the time said telephone conversation took place, testified that she remembered the conversation between Vogeler and Martin at that time, as she was required to stop typewriting while the conversation took place; that she heard Mr. Vogeler say to the person speaking that "You are not to sell fifty thousand pounds of alfalfa seed at eight cents per pound, or any other price; we have not that amount of seed for sale and could not deliver that quantity of seed." He further said that the party talking could sell five thousand pounds at eight cents, if the party would pay $125 cash, but that he could not deliver more than that amount. That there was received at the office of defendant on January 16, 1901, a check for $125 with a contract for the delivery of fifty thousand pounds of alfalfa seed, and that the check was immediately returned to Mr. Wilson on the same date that the letter from the plaintiff was received. The following is a copy of the letter:

"Salt Lake City, Utah, Jan. 16, 1901.

"Thomas C. Wilson, Esq., Idaho Falls, Idaho.

"Dear Sir: Yesterday Mr. S. H. Martin telephoned us, saying that he had a chance to sell five thousand pounds of alfalfa

seed and that party would deposit on same $125, to which we answered him that he may do so, and were greatly surprised this morning to be in receipt of the enclosed contract, which says fifty thousand pounds. Our Mr. Martin knows fully well that we have not this amount of seed in stock, and therefore would not care to contract for seed that we have not in our possession. Therefore are obliged to herewith return contract and check. We have five thousand pounds of this Purity brand in stock and should this be what you desire, please let us know and we will hold this amount for you. It would be a difficult matter to gather up fifty thousand pounds of as good a quality as our Purity brand, of which you have already sample.

"Kindly advise if this is agreeable to you, and we will hold five thousand pounds of Alfalfa Purity, subject to your order, on payment of $125 thereon.

"Very truly yours,

"VOGELER SEED AND PRODUCE CO."

H. W. Smith testified that he was bookkeeper for the appellant at the time said telephone conversation took place and was present at the time and heard what Vogeler said at the phone; that in that conversation Vogeler said that Martin must not sell fifty thousand pounds of seed at eight cents per pound because he did not have it; that he gave him permission to sell five thousand pounds at eight cents for delivery within sixty days provided $125 was deposited; that he said not to sell more than five thousand pounds as the price had not only advanced as per his telegram of the 13th inst., but that he did not have the seed on hand to sell; that a check and contract was received at the office on January 16th, and on the same day returned to the appellant, accompanied by the letter above quoted.

Vogeler testified in his own behalf that he had a conversation by telephone with Martin on the fifteenth day of January, 1901; that he knew Martin's voice; that Martin said in that conversation that he had a chance to sell fifty thousand pounds of alfalfa seed, Purity brand, and that witness replied for him not to sell fifty thousand pounds or any part thereof upon those terms; that he did not have that much stock at that time; that

Martin then said: "Can I sell five thousand pounds?"   And witness said, "yes," and Martin replied that it was to the Z. C. M. I.; that witness replied that upon the payment of $125 that would be O. K., and that was all that was said.

The above is the substance of all the evidence as to the conversation that occurred over the telephone.   We there have the positive statements of Vogeler, Smith, the bookkeeper, and Toronto, the stenographer, that Vogeler didn't authorize Martin to sell fifty thousand pounds of seed, and against this we have the testimony of the telephone operator and the respondent. The operator admits that he didn't hear all of the conversation which covered a period of about two minutes, and that during that time he broke in on the line twice.   And further, the check of $125 received by appellants was immediately returned to the respondent.   The respondent only heard what Martin said and did not hear what Vogeler said over the phone.   Their testimony shows that they only heard a part of what was said.   It would be a dangerous rule to hold that the minds of the parties had met on a proposition to sell and purchase with only the statements made by one party over a phone.   It is true the statements made by Martin would indicate that appellant authorized him to make the contract.   They also indicate that Martin was very anxious to make it, no doubt to earn a commission. What Martin said in that telephone conversation as testified to by respondent and the telephone operator does not preponderate over the positive testimony of appellant and his witnesses, Smith and Toronto.   Inference and surmise are not sufficient to overcome the positive testimony in the case.   I think that observation and experience show that mistakes are liable to occur in telephone conversations and misunderstandings arise between the persons talking, and the chances for a third party to fully understand such conversations, they only hearing what was said at one end of the line, is considerable.

And again, fifty thousand pounds of seed at eight cents per pound would amount to $4,000.   This seed, according to said alleged contract, was to have been delivered within sixty days on the payment of $125 as a forfeit.   This is an advance of less than one-third of a cent per pound on said seed, and when it

comes to the probabilities, it is hardly probable that a good business man would make such a contract where the subject of the contract was so liable to fluctuation in price during the sixty days' option to deliver said seed. A $125 payment on a five thousand pound sale would be more probable. But we do not have to go into the realm of probabilities to decide this case.

We do not think there is a substantial conflict in the evidence on the point as to whether Vogeler authorized Martin to make the alleged contract, while an inference might be drawn from the testimony of the telephone operator and the respondent that Martin was authorized to sign said contract, but when the testimony of the appellant, his bookkeeper and stenographer is considered, we do not think there is a substantial conflict as the positive testimony clearly overbalances the inference to be drawn from the testimony of the respondent.

The second error assigned involves the ruling of the court in permitting the respondent to detail a conversation between himself and one H. L. Griffin of Ogden, Utah. That evidence was clearly incompetent; it was purely hearsay, and the court erred in admitting it. After it was admitted, simply because counsel for the appellant cross-questioned the witness did not cure the error or make it complete. The order of the court refusing to strike out the testimony of witness Hughes as to what he heard over the telephone is assigned as error. It is true that Hughes himself testified that he heard only fragments of the conversation; that he broke in on the line twice during the two minutes that said conversation lasted, and admits that he may not have heard all the conversation, but we think it was proper that the part of the conversation heard by him should go to the jury.

The refusal of the court to give defendant's instruction number four and one-half is assigned as error. Said instruction is as follows: "The court instructs the jury that if on the fifteenth day of January, 1901, at Idaho Falls, Idaho, S. H. Martin telephoned the defendant Vogeler, at Salt Lake City, Utah, that he could sell fifty thousand pounds of alfalfa seed at eight cents per pound and if the defendant telephoned S. H. Martin not to sell fifty thousand pounds of Purity alfalfa seed, but that he could sell five thousand pounds of Purity alfalfa seed, at

eight cents per pound, and by mistake S. H. Martin understood the defendant Vogeler to say fifty thousand pounds, when he only said five thousand pounds, the plaintiff cannot recover in this action, and you should find for the defendant." We are not satisfied that the court erred in refusing to give said instruction, and the court is not agreed as to whether said instruction is the law under the pleadings and evidence in the case, and therefore hold that the court did not err in refusing to give it.

There is some contention in the record and some evidence whereby it is attempted to be shown that Martin had authority to bind the appellant in contracts for the sale of seed without his submitting such contracts to him, and under the evidence contained in the record, we think that the court erred in not giving said instruction. The plaintiff well knew that the authority of Martin to make said contract was procured by telephone, if procured at all, and if the testimony of said Vogeler, Smith and Toronto is to be believed, no such authority was conferred, and the fact would remain that Martin acted without authority whether from misunderstanding or from the desire to earn a commission. It will not be seriously contended that if the minds of the parties in this case did not meet or come together, they did not agree, and no contract was entered into. The judgment must be reversed, and the cause remanded for further proceedings in accordance with the views expressed in this opinion. It is so ordered, with costs in favor of appellant.

Stockslager, C. J., and Ailshie, J., concur.